Bank Corporation, NA. Ms. Neal? Good morning, and may it please the Court. This Honorable Court should reverse summary judgment in this case. The trial court did not recognize the The first issue is that Sears presented material fact issues as to whether or not he can establish a prima facie case of age discrimination on the fourth prong of being replaced, and alternatively, as to whether he was otherwise discharged because of age. The second issue I want to touch on is that Sears presented material fact issues as to pretext in the reason that he was given for his discharge that the company was eliminating his position so that it could hire a department manager. For decades, this Court has been describing plaintiff's burden on the prima facie case as minimal, dating back to the 1985 Thornbrough v. Columbus and Greenville Railroad case. The crux of the replacement issue in this case is that because of the division of labor in Sears' department, where one primary senior vice president handled the business development and marketing duties, that being Sears, this was not merely a redistribution of duties. It was a replacement. As this Court said in Howard v. UPS, the distinction between job elimination and replacement are more clearly applicable when the case involves layoffs or employer-planned rifts as opposed to the elimination of a single job at issue. In the instant case, there was no layoff or employer-planned rift. And the Court should find that just because this was labeled by the defendant as an elimination, the fact that existing employees got Sears' job duties does not mean that he was not replaced, especially when the burden is so low on the prima facie case at this stage. Counsel, do you believe that the Vaughn case requires more than just the fact that the oldest employee out of a group is terminated? I believe that the Vaughn v. Adele case has a fourth prong that requires the plaintiff only to show that they were terminated but substantially younger employees remained in his or similar position. Okay, and how do you reconcile your position regarding Vaughn that you just mentioned regarding the fourth prong, describing the fourth prong with regard to Title VII cases and ADEA cases? Isn't there a difference? Well, I do not believe that in Bodenheimer, which I believe was issued three years later after Vaughn, that it was expressly overruled, in other words, that prima facie case that the Vaughn case laid out. But my point here today is that I can meet both standards in this case, and my argument is based, therefore, upon meeting the prima facie case that was laid out in the Bodenheimer case. We can, of course, though, prove that substantially younger individuals remained in similar positions when Sears was terminated. Let me ask you, too, before you go on, his good job performance, how is that – seems like that's undisputed. I didn't get any sense from the briefs that there was any complaint about his job performance. So would you agree that that's not relevant to the consideration here? Well, that's an interesting issue. This was not a performance-based termination, and he was told that, as you clearly just pointed out. However, in ranking or analyzing the employees for RIF, some issues did come up in the briefing that you probably noticed, and those issues also came up only after the company had made a decision to terminate my client but before they notified him. And, therefore, that's why I have addressed good job performance in the pretext part of the case. I think that that's where it's appropriate, if at all, to discuss. With all of this in mind, several facts – the facts that are most central to my argument, that the plaintiff was replaced, or that, as I said, Sears' primary role was marketing and job – and business development. And Kennedy admits that he was the hunter. Kennedy admits that Murray was the skinner of the three senior vice presidents. And McSorley handled mostly the tech issues and compliance. Sears supervised and trained the junior officers as part of his job duties on calling and prospecting and on client files. In February of 2018, Kennedy promoted the 31-year-old junior banker, as they've been calling him, Askew, to senior vice president. And Lange, who was in his 30s, to vice president. Kennedy promoted Askew to energy lending team lead just two months later, the day after terminating Sears, and gave him a $9,000 raise. Askew immediately began – Did Sears ever consider the team leader? Sears saw himself as the team leader, though he never had the title. The business development and marketing person was sort of the tail wagging the dog of the department, I guess you could say. And he saw himself and felt like he was considered as a team lead by the other members of the department, including the other two senior vice presidents. And he testified that he performed the same duties listed in Askew's team lead job description to include responsible for developing strong, low-risk energy relationships while maintaining quality customer service, develops, generates, and follows up on new client leads. And I'm quoting there from Mr. Askew's team lead job description. Askew immediately, after Sears was terminated, began handling the sales calls, and Kennedy admits sending Askew on those calls in his deposition. So, as the court said in Howard v. UPS, because the record reflects that only Howard's specific position was eliminated and his duties were absorbed by someone outside the protected class, Howard has made a prima facie case showing of discrimination. I've heard you, Judge Owen, asking what's your best case. My best case, there are two of them, for this argument is a case called Young v. Harris Healthcare out of this court, in which this court reversed summary judgment on the replacement. It included a replacement issue in that case in the court reversed summary judgment. The defendant asserted that the plaintiff's position was eliminated, as here in the instant case. She was terminated and her duties were divided into three new positions. The company hired three new, substantially younger employees to take those positions. And the court found that she had established a prima facie case on the fourth prong of replacement. We have that here, in that Askew was new to a senior vice president position, and Lange, who assumed files, was new to a vice president position. And while we're on the subject of the files, it is true that the senior vice presidents all had several files they were managing. Many of those were for syndicated client loan deals. And when Sears was terminated, you've heard and you're going to hear that eight files were distributed that had belonged to him. Four of them went to the substantially younger Lange, who had recently been promoted to vice president. Does that – and maybe I'm misunderstanding your argument, but just to be clear, does the fact that the files were distributed to others undercut – are you arguing that Mr. Askew replaced, or are you admitting that he was not replaced, but that's not essential to the claim? I'm arguing that Mr. Askew replaced Mr. Sears because his main duty was the business development. But you don't see a conflict between that argument and the fact that his accounts were redistributed to others. In other words, Mr. Askew did not just plug into Mr. Sears' position. I don't, and defendant, of course, is – or Zions is arguing that, and that's why I wanted to address it. I do not see the conflict because four of the files went to a substantially younger individual that was already working in assistance with Sears on those files. That was Lange. Two of the files went to Mick Sorley, who's substantially younger, seven years younger than the plaintiff. And two went to Mr. Murray, who was 63 and terminated the next year. With Askew at the helm of all the files as the new team lead. So I don't see the conflict there, but I wanted to address it because it is an issue in the case. The second case that I want to offer as analogous to the facts in our case is a case out of the Northern District of Texas called Duff v. Farmers. And the Young case was cited in that case by the court, which found – did not find in favor of plaintiff ultimately on summary judgment, but did find that she had met a prima facie case – or there were two plaintiffs. They worked for Farmers. One was a special claims representative. One was a senior claims representative. They were terminated, and the – in discovery, the plaintiff turned over evidence that three claims representatives who were substantially younger were soon promoted into those very positions. And I claim that – I believe that's a very analogous scenario to what we have here. So in that case, the court held that evidence that the employer reassigned or promoted other existing employees to assume the plaintiff's position is sufficient to establish the replacement prong of the prima facie case in this summary judgment. Proceeding. The cases cited by defendant are distinguishable. The main case they're relying on is the Keene case out of a district court in Texas. The Keene case, ironically in that case, the court declined to make a finding that the plaintiff had not been replaced. And on appeal, this court declined to opine on that issue as well and affirmed based on lack of pretext. But the case is distinguishable because in that case, there was a performance issue. And the plaintiff – there wasn't an elimination that was being claimed to my recollection. But over a period of 18 months, the plaintiff had performance problems and his duties were slowly stripped away and given over those 18 months to four substantially younger employees. And we do not have that situation in this case because Sears' position was eliminated all at once and Zion's asserts there wasn't a performance problem. Also, the Keene case relies on the Doolin versus Dover opinion of this court. And that's where it gets the phrase that defendant has hung its hat on in this case for saying that the plaintiff wasn't replaced. But Doolin is distinguishable because the employee's construction superintendent supervisory position was eliminated due to substantial losses the company proved it had or presented substantial evidence that it had and a resulting need to cut costs. So there was a bona fide cost-cutting need there. We do not have that here. That has not been shown. Evidence has not been presented to that effect. And in that Doolin versus Dover case that the Keene case cited, the plaintiff's duties were divided between two existing employees and the court found it significant that they did not get a raise. In this case, Askew got one of several raises that he got in the year following the plaintiff's termination, the very day after the plaintiff was terminated and he got the team lead position. Moving on to pretext. Oh, I also want to say that the- The April 3, 2018, review of Mr. Sears demonstrates pretext. I'm sorry? How does the review that Kennedy did of Mr. Sears, I think it's the April 3, 2018, review, how does that demonstrate pretext? Because Kennedy, even though there were policies at the company, including one implemented in 2016 in addition to the handbook policy, that said that the team, the managers were supposed to sit down with their employees and provide coaching and feedback and development plans. And Kennedy never did that with my client. But the day after they decided to terminate him, he brings a, it's not a laundry list, it was three items to the client's attention saying, and it's briefed in our briefs, that he's unhappy with the performance. But he never, over all these years, as much as sat down with the employees, gave them any criticism, to Sears, gave Sears any criticism, wrote out a handwritten review with any substance. He just gave numerical reviews. And I want to also emphasize before my initial time is up the lack of credibility. And I think the main thing that we have here is that Kennedy said that he needed to open up headcount so that he could hire a department manager. But he took that money and gave $45,000 to ask you over the next year. And they did give someone, they had another manager assume the manager duties of this department, and he only got a $15,600 raise. He also said he wanted a mix of early career and late career bankers. But after Sears and Murray were gone, all there were were substantially younger bankers in this department. There was also a failure to follow established policies, and this court has found that that is evidence of pretext and evidence of more favorable treatment of substantially younger employees. And that's my time for this part. Good morning, Your Honors. May it please the Court. The district court was entirely correct in granting summary judgment on Mr. Sears' claim of age discrimination under the Texas Labor Code. He did not establish a prima facie case because he did not establish the fourth element under the law as it was articulated by Mr. Sears at the trial court level and this court. And he did not establish a fact question regarding pretext. It is critical to understand the chronology of exactly what happened. This was a reduction in force. It was carried out in April of 2018. The structure of the Dallas Bank had been for many years to have four senior vice presidents operating under a dedicated manager. The manager retired in 2016. In late 2017, there was talk about maybe moving Mr. Askew up, not just to senior vice president, which was already scheduled to occur, but to bump him all the way up to manager. And the bank backed off of that idea, and they said, well, we're just going to promote Mr. Askew to SVP like he was already scheduled to be in February of 18, and we're going to eliminate one of the SVP positions to make room in the budget to hire an outside manager. Once that game plan was put in place, in late 17 and early 18, Mr. Kennedy, the decision maker, who is age protected, as are almost all of the people we're talking about today, performed a ranking. He performed a ranking of the four SVPs, Mr. Sears, Mr. Murray, who was the same age as Mr. Sears, Ms. McSorley, who was 57 years old, and Mr. Askew, who was admittedly substantially younger. He ranked them on their relative job performance, and he ranked Mr. Sears fourth and last. And he took into account, among other things, an email that Mr. Sears had recently sent to Kirk Wigington, the president of the Dallas Bank, which both Mr. Wigington and Mr. Kennedy viewed as very seriously insubordinate. That, along with the relative performance rankings, were what led Mr. Kennedy to decide to eliminate Mr. Sears' position as among the four SVPs. The decision was made on April 2 of 2018. Mr. Sears was told about it on April 30 of 2018. The evidence in the record regarding redistribution of job duties is very important to understand. Mr. Sears had... Let me move off of the timeline. Sure. You claim that Mr. Kennedy performed that informal ranking in the spring of 2018. How do you reconcile that with the... How do you reconcile the January 10, 2018, email, I think the one you just mentioned, discussing, quote, transitioning Larry out? How do you reconcile that with the timeline of the spring 2018 ranking? I don't think that email that Your Honour is referring to was authored by Mr. Kennedy, but the... Oh, it was by the executives, I think, the Amogee Bank executives? It may have been a comment by Mr. Wigington. He was not the lead decision-maker on this. I don't know what Mr. Wigington had in mind when he wrote that. He was deposed in this case. But the decision-maker, it's undisputed, was Mr. Kennedy. My point is there's an email saying we need to transition Larry out. There is. It was a prima facie case. There is. There is that email there. There's a ranking after that that you're arguing supports the notion that he was not discriminated against, that this was a business decision that was supported. Correct, and I would note that the email from January certainly doesn't say let's transition Larry out because he's old. It says let's transition Larry out. It would never be that obvious. Sometimes it is. Sometimes it is, but in this case it isn't. We're talking about just a prima facie case at this point, and as I understand it, your opponent's arguing that that timeline actually favors the plaintiff in this case. That certainly is the argument, and I don't believe it does, and I recognize the prima facie case is not always the hardest burden to meet, but in this case it is because he has to show that he was replaced, either replaced by somebody substantially younger, replaced by somebody outside of his protected class, or if he can't show that, he has to show, under the Texas Supreme Court's very recent Flores case, he has to show that he was treated less favorably than somebody substantially similarly situated. Under the Bodenheimer prima facie case, he has to show that he was otherwise discharged because of his age. Judge Cummings actually considered both of those, although he didn't cite Flores by name, said he didn't meet either of those, and by the way, he wasn't replaced. And here's how we know he wasn't replaced. He had eight main clients, eight files to be reassigned, and this is in the record. Two of them went directly to Mr. Murray, same age. Two of them went to Ms. McSorley, 57 years old. The other four he had already been working on, Mr. Sears had already been working on with Mr. Lang, who was not an SVP, he was a more junior banker. Those shifted to Mr. Murray. Mr. Lang didn't pick up new work. He kept working on those four files he'd already been on. He was just working them with Mr. Murray instead of Mr. Sears. None of the eight files went to J.B. Askey. The only thing that J.B. Askey got was the opportunity to go on a single sales call, not sales calls plural, a single sales call that was scheduled for the day after Mr. Sears' termination. He got to ride along with one of the junior bankers to Longview, Texas for the day. That's the sales call. That's all the replacement evidence in the record. Mr. Sears was not replaced. And as to this idea that Mr. Askey was given the title of team lead, he certainly was, and as Your Honor pointed out, that was not a replacement. Nobody had ever had that title before. Team lead was implemented to allow Mr. Askey to serve effectively as the leader of Mr. Bush and Mr. Lang, the two junior bankers. He was not elevated above Mr. Murray or Ms. McSorley. Eventually, many months later, a banker from Houston, Scott Collins, also age-protected, was brought in to serve in the role that Mr. Kennedy had sort of been serving as the quasi-manager. They never filled the manager position with an outside hire. There's never been an outside hire relative to any of this. And Ms. Neal talked about the Howard case and talked about, well, maybe somebody in where there's a single position eliminated, they don't really have to prove replacement if their job duties were distributed. And that's not true. The Howard case is simply not on point. The Howard case was not, one, it wasn't an age case, and two, it wasn't about a termination. Mr. Howard was demoted, and all of his job duties were picked up by somebody who was outside of his protected class, who was white. Mr. Howard was black. Howard doesn't negate this Court's holding in the Rexis case. A terminated employee has not been replaced when his position is eliminated, and all of his duties were distributed among his coworkers, whoever they may have been. That was the holding in Rexis. That was the holding in the Alanis case a couple of years ago. The Court has never deviated from that. Mr. Sears was not replaced. He was not treated less favorably than similarly situated employees. He cannot just point to the fact that a younger person remained or that he was the oldest person eliminated. That's not enough under any standard. If that's what Vaughan seems to say, Vaughan wasn't an age case. And as this Court noted in the Vasquez case in 2006, a very different standard for the fourth element applies in the ADEA context versus what was articulated in Vaughan in the context of the Title VII claim. So we have no prima facie case. Even if the Court assumes, as Judge Cummings did, even if you assume a prima facie case exists, the summary judgment was still correct because there was no evidence of pretext. There was no evidence that Amagi's articulated reason for his decision, his business decision, we need to eliminate one SVP position to make room in the budget to hopefully make an outside hire. There's no evidence that that was pretextual. Now, the appellant has suggested several arguments for pretext. And the one that he leans into most heavily is his own good job performance. It's not evidence for the prima facie case and it shouldn't be considered relevant evidence for pretext either. Mr. Sears was not eliminated, and nobody told Mr. Sears that he was eliminated because he had objectively poor performance. Nobody said Larry Sears is bad at his job. When Mr. Kennedy did his ranking, he considered the relative job performance of these four. And he looked at performance reviews, and although we don't have Ms. McSorley's performance reviews in the record, I don't believe, of the three whose performance reviews are in the record, it's undisputed that Mr. Sears were last. They weren't bad. They were all above four out of five. They all got good reviews. But Mr. Sears got the least good reviews. So when he comes to this court or when he came to the district court with evidence that proves, look, I shouldn't have been let go because I was good. I shouldn't have been terminated for cause. That's a strongman argument. He wasn't terminated for cause. This is a reduction in force, and his good performance, unless it somehow showed that his... I kind of meet myself coming around when I try to get my mind around this. You say he was terminated not to make a place for another person, but they never hired another person. They never ended up hiring anybody else. But why isn't that some evidence of pretext? That nobody else was hired for the managerial role? That's not the role he was removed from. He was removed. They eliminated... But their point is, his point is, they took the money, they terminated me to take that money so they could create another position, and I didn't ever create the other position. They didn't. They ended up saving money. That's not proof that the decision to eliminate the position was pretext. That's proof that they decided to further scale back and not go spend that money on an outside hire. They covered it with Scott Collins, who got more responsibility and no increase in pay. The appellant has cited a couple of cases on this issue, good performance, to suggest that it's relevant to the pretext inquiry. And all of those cases, I would note, are seriously off point. The appellant cited... These are all district court cases, Johnson, Paulson, and Glassmeyer. And all of those cases did say good performance is relevant to the pretext inquiry, but those were all cases in which the employee had been fired for cause. And so there, when somebody's fired for cause, sure, let them bring in evidence that, in fact, they were good at their job and didn't deserve it. Well, let me just give you a hypothetical. Sure. Let's say I'm 55, and I'm about to get to the point where you're going to have to fund some things long term. You tell me, we're getting rid of you because you're the lowest rank, we're going to take your salary and hire somebody new. You terminate me. You just shift my responsibilities to somebody younger. You saved not only what you were paying me, you saved the benefits that I would have gotten had I stayed another month or two. So why is it that some evidence that I was fired because of my age? Well, in that hypothetical, it might be that Mr. Sears' job duties weren't shifted to somebody younger, significantly younger. They weren't shifted to J.B. Askew. Almost all of his job duties were shifted to Mr. Murray and Ms. McSorley, who was roughly seven years younger, but certainly well within the protected age range. And again, the rest of the files had already been being worked on by Mr. Lang. Supervision of them just shifted from one 63-year-old to another 63-year-old, from Mr. Sears to Mr. Murray. Ms. Neal also made reference to a failure to follow policies as evidence of pretext. And the policies that she was referring to are policies regarding written performance reviews. And it is true that at the company's employee handbook, there were words to the effect, and I can't quote it off the top of my head, but managers should endeavor to sit down with their employees once a year and should put performance reviews in writing. And for at least one year, Mr. Kennedy did not do that with respect to Mr. Sears. He gave him the numerical ranking, but there was no written performance review. He does it the day after he decides to terminate him. Why is that not evidence of pretext? It's not evidence of pretext because... But why? Why would he do it the day after he decides to terminate? Why is it relevant to do it at that time if he's already going to be terminated other than to help support the pretext? Well, again, what was communicated to Mr. Sears in that performance review the day after the decision had been made but a month before it was communicated to Mr. Sears, one, I think there's probably just a kindness to Mr. Sears not to tell you, you know, you're going to be fired in a month or you're going to be riffed in a month, you're going to be let go in a month. Mr. Kennedy did do a performance review and commented on some of these more recent concerns that he had, but the fact that he followed the policy on that occasion isn't evidence of pretext because the policy in the cases that the appellant cites where failure to follow policies is evidence of pretext is, for example, and I think the case is called Magnolia Bank, the employer had a published reduction in force policy. This is how we will do riffs. They didn't follow that policy in doing a riff. They came up with a whole new policy just for this riff, for this one person, and then they didn't even follow that policy, and that, the court held, was evidence of pretext. You didn't follow your own policy on this subject. There has been no argument that Amagi failed to follow its own policies, whatever they may have been, regarding reductions in force. That's the type of failure to follow evidence that would be relevant. That's not here. In the briefing, the appellant has also pointed to supposed disparate treatment of other employees as evidence of pretext, and that's not the case either. Mr. Sears has testified about his own observations that Mr. Kennedy was, for example, more communicative with younger bankers or with non-SVPs than he was with Mr. Sears. And as Judge Cummings very astutely observed, that's not evidence that Mr. Kennedy had some sort of age-related bias. That may just as well be evidence that Mr. Kennedy was mentoring and coaching people like J.B. Askew and Matt Lang and Mr. Bush. It's not evidence that Mr. Sears was treated unfairly. It's not evidence that Mr. Sears was treated differently because of his age, just because he didn't chat with Mr. Kennedy as often as some other bankers did. Just to return briefly, if I may, to the prima facie case, because I think this is important as well, the analysis in the non-replacement scenario in the Bodenheimer case is otherwise discharged because of age. That's the alternative way of proving pretext. And the case that the appellant relied on for this is the type of evidence required is the Machinchik case. And the quantum and quality of evidence in that case is very different from here. In that case, the employee proved otherwise discharged with an email from the decision maker talking about wanting to keep younger employees, with an email from the decision maker talking about how the discharged employee had a low motivation to adapt to new procedures, how he wanted people with their mindsets in the 21st century. And this was also an employee who was fired for cause and the employer failed to follow its own performance improvement plan before firing him for cause. That's the sort of evidence that gets you across the line for otherwise discharged. Mr. Sears doesn't have that. And I do note that the... And this isn't in the briefing because it's not germane directly to the issues on appeal, but the Texas Supreme Court in November of 2020 in the Texas Tech v. Flores case said merely proving otherwise discharged isn't enough in a non-replacement case. The Texas Supreme Court has said in an age case under the Texas Labor Code, you must come in with comparative evidence. You must come in with data. You must come in with... and show that you were treated less favorably than employees similarly situated in nearly identical circumstances. Mr. Sears very certainly does not have evidence of that type. At some point... And this Court has recognized in the Ross case that came out after Judge Cummings issued his opinion in this case that Flores is controlling with respect to age claims under the Texas Labor Code. My point in circling back to that is if the Court is at all concerned about... Does Flores apply? The answer is yes, Flores applies. And Flores applies. Mr. Sears could not have met Flores because Mr. Sears did not meet the otherwise discharged burden, which is a lesser burden than the burden imposed in Flores. So in summary, Mr. Sears did not create a fact question on his prima facie case because he was not replaced. His duties were fully distributed, and they were not distributed to J.B. Askew. He was not otherwise discharged because of his age, and he certainly didn't have the comparative evidence necessary under the law, and he cannot prove pretext. For all of those reasons, the District Court got it absolutely correct, granted summary judgment on his age claim and on the other claims which aren't here on appeal, and we ask the Court to affirm. Unless the panel has other questions, I will thank you for your time. First, I want to distinguish the two cases that were cited along with Keene, the Rexis v. Goodyear case that my counsel, esteemed counsel, just mentioned. In that case, the Court held that a 53-year-old plaintiff failed to make out a prima facie case, but it's distinguishable because the Court found that the replacement duties were just too materially different from those of the plaintiff to say she replaced him, and also there was only an age difference of five years between the plaintiff and the replacement, which this Court has called a close question. Also, the Huerta v. Phillips case, it is distinguishable. In that case, there was a severe performance problem with this employee who arguably abandoned his job. He said he was sick, and then they filmed him out up on a roof working or something like that. He was an operator at a refinery. He didn't return to work for a month or return the employer phone calls, and there was evidence he was untruthful. So those two cases along with Keene are distinguishable, and they do not get defendant there. And I want to also return to pretext because it was labeled as inadequate evidence by my opposing counsel, and I want to start with the evidence that he brought up of more favorable treatment of substantially younger employees. After Kennedy took over at the end of 2016, Askew's performance scores consistently went up and Sears consistently went down. And again, there was no specific feedback given to Sears about that. This one is really important. Askew's 2017 evaluation score was missing from the RIF analysis, missing from the production. And if there was any, it wasn't considered in the RIF analysis, but Sears' 2017 performance score was, and we claim that... We don't have to prove that we were treated differently than a similarly situated person, but if the court finds that we do, I certainly think that's evidence. If my client is terminated in a RIF and his 2017 scores were analyzed as part of that RIF and Mr. Askew's were missing because that was the year that he was studying for a company-paid MBA and my client observed him studying on the job, that's certainly the evidence that would get us to that point. Other evidence of pretext is that Kennedy interfaced more with the younger bankers, and courts have found that to be evidence of pretext in these cases. Askew also confirmed that Kennedy did not admonish him for the Houston trip that Sears and Askew took together that they didn't inform Kennedy of, and that's also important because that was one of the things that Kennedy mentioned to my client on the day after he was terminated when he sat down and complained to him about three things. He complained to him about something that Askew did to Askew Complaint but told my client he had not been admonished for that, so we claim that's key. I also wanted to note, in terms of good performance, Mr. McCarter never received any complaints, that's the former manager of the department, never received any complaints about my client from Kennedy or Wigginton, especially any complaints that he wasn't responsive, wasn't communicative. Mr. Kennedy testified that none of the other senior vice presidents had ever complained about Sears' performance, and Kennedy himself admits that my client did a good job, despite now sort of arguing but sort of not, that he had a performance issue. And my client also received many accolades from the corporate leaders at Zions, and those are in the briefs. Rewinding to the failure to follow established policies or have documentation of alleged performance problems, Kennedy admits that he could have provided leadership and that he got complaints from Wigginton about this. So that's something I also wanted to note in that regard. But I think the bottom line is that looking at all the evidence in the light most favorable to the plaintiff, as the court should do, and with the minimal burden that the plaintiff has to reach on a prima facie case, as noted by this court for many decades, that this case should not have been thrown out on summary judgment and my client, and the law supports it, and may it please the court. That will conclude the arguments in front of this panel for the week. The cases that we've heard are under submission. Thank you.